IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

NATALIE COOK, )
)
    Plaintiff, )
)
vs. ) Case No. 13-cv-657-TLW
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )
Administration, )
)
    Defendant. )

## OPINION AND ORDER

Plaintiff Natalie Cook seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), and Fed. R. Civ. P. 73, the parties have consented to proceed before a United States Magistrate Judge. (Dkt. 13). Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

## INTRODUCTION

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168,

1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

## BACKGROUND

Plaintiff, then a forty-six year old female, completed her application for Title II benefits on March 28, 2012. (R. 102-03). Plaintiff alleged a disability onset date of March 4, 2011. (R. 102). Plaintiff claimed that she was unable to work due to problems with her "back left arm, both knees; low back; left arm and finger numbness and tingling; bilateral knee pain; [and] bilateral foot arch pain." (R. 116). Later, plaintiff alleged that increased back pain, depression, and anxiety also keep her from working. (R. 163). Plaintiff's claims for benefits were denied initially on May 21, 2012, and on reconsideration on October 8, 2012. (R. 52, 58-61; 53, 64-66). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on April 22, 2013. (R. 31-50). The ALJ found that plaintiff was unable to perform her past relevant work as a certified nurse aid, but that other jobs existed in significant numbers that plaintiff could perform. Therefore, the ALJ issued a decision on May 22, 2013, denying benefits and finding plaintiff not disabled. (R. 11-25). The Appeals Council denied review, and plaintiff appealed. (R. 1-4; Dkt. 2).

**The ALJ's Decision**

The ALJ found that plaintiff's last insured date was December 31, 2015. The ALJ found that plaintiff had not performed substantial gainful activity since her alleged onset date of March 4, 2011. (R. 16). At step two, the ALJ found that plaintiff had the severe impairments of "status post lumbar surgeries, obesity, depression and anxiety." Id. He also found that plaintiff's claim of wrist pain was not supported by the record, and therefore was medically non-determinable. Id. The ALJ analyzed the "paragraph B" criteria for mental impairments, determining that plaintiff

2

experienced no restriction in activities of daily living, moderate limitation in social functioning, and mild difficulty in concentration, persistence, or pace. Plaintiff experienced no episodes of decompensation. (R. 17-18).

At step three, the ALJ determined that plaintiff's impairments did not meet or equal a listed impairment. (R. 16). After reviewing plaintiff's testimony, the medical evidence, and other evidence in the record, the ALJ concluded that plaintiff retained the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except with additional limitations. The claimant is able to occasionally lift and/or carry ten pounds, frequently lift and/or carry up to ten pounds, stand and/or walk at least two hours out of an eight-hour workday and sit at least six hours out of an eight-hour workday, all with normal breaks. The claimant is able to relate to co-workers and supervisors on a superficial work basis, but is not able to work with the general public.

(R. 18-19). At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a certified nurse aide because it exceeded the sedentary exertional level. (R. 23). At step five, the ALJ found that plaintiff could perform the sedentary jobs of touch-up screener, and addresser. (R. 24). Because he found that other work existed that plaintiff could perform, the ALJ determined that plaintiff was not disabled. Id.

**Medical Evidence[1]**

Plaintiff began treatment at Grand Lake Mental Health Center and was seen regularly from October 5, 2012 through at least April 10, 2013, when Dr. Miller and Mr. Byrd completed the medical source statement in question. (R. 370-405, 410-12, 425-27). Plaintiff complained of symptoms of obsessive compulsive disorder, panic, increased withdrawal, increased crying, anhedonia, negative thought patterns, increased irritability, and poor appetite. Id. She was

---

[1] Plaintiff's allegations of error focus on the Medical Source Opinion of Ability to do Work-Related Activities (Mental) signed by Dr. Peteryne Miller and Mr. Deliz Byrd, both of whom treated plaintiff at Grand Lake Mental Health Center, Inc. The Court will limit its discussion of plaintiff's records to the records from Grand Lake Mental Health Center and Dr. Miller's Medical Source Opinion.

diagnosed with agoraphobia with panic attacks, and an adjustment disorder "with mixed anxiety and depression." (R. 375, 378, 390, 397). On intake, plaintiff reported that she was currently taking Celexa for depression, and Xanax for anxiety, both prescribed by her primary care physician. (R. 391). Dr. Miller replaced Celexa with Effexor (75 mg) because plaintiff reported that Celexa was not working, and added trazodone to help her sleep. (R. 376).

In December 2012, plaintiff complained that Effexor was not curbing her depression, so Dr. Miller doubled the dosage to 150 mg. (R. 370). By March 2013, plaintiff reported the increased dosage was helping her depression. (R. 410). She reported "feeling sad less often," getting out of bed, showering, and "accomplish[ing] tasks throughout the day." Id.

In connection with her disability claim, plaintiff submitted a Medical Source Opinion of Ability to do Work-Related Activities (Mental) to Grand Lake Mental Health Center. Dr. Miller and Mr. Byrd completed and signed this form on April 10, 2013. (R. 425-27).

Dr. Miller opined that plaintiff suffered moderate limitation in the following areas: the ability to remember locations and work like procedures, the ability to understand and remember detailed instructions, the ability to maintain attention and concentration for extended periods in order to perform both simple and detailed tasks, the ability to adhere to a schedule and maintain regular attendance, the ability to perform at a consistent pace without an unreasonable number or length of rest periods, the ability to handle normal work stress, and the ability to accept instructions and criticism from supervisors. (R. 425-26). Dr. Miller further opined that plaintiff suffered marked limitation in the ability to work in close proximity to others without being distracted, the ability to interact appropriately with the public, and the ability to work with others without causing distractions. Id. However, each instance in which Dr. Miller identified a limitation begins with the phrase "She reported …," indicating that Dr. Miller based her assessment at least in part on plaintiff's subjective complaints. Id. Dr. Miller listed plaintiff's

diagnoses of agoraphobia with panic attacks and adjustment disorder as support for her opinion. (R. 426).

**ALJ Hearing Testimony as it Relates to Dr. Miller[2]**

After the ALJ posed the hypothetical which he ultimately adopted as plaintiff's RFC to the vocational expert, he allowed plaintiff's attorney to question the vocational expert. Plaintiff's attorney asked "if any of the limitations expressed in [Exhibit] 19F, … would those marked limitations preclude competitive employment?" (R. 48). The vocational expert responded that the marked limitation in the ability to work with others without causing distraction "would eliminate employment." Id. The ALJ then asked the vocational expert to clarify her understanding of a marked limitation in the ability to work with others without causing distraction. (R. 48-49). The vocational expert responded that she understood a marked limitation in that area to mean:

> Disrupting production and pace – for up to – greater than 20 percent of the day, and that is due to the definition of marked. There is – under C1 he has listed marked for the ability to interact appropriate [sic] with the public but there are jobs that could be done that would not have interaction with the public. So in my opinion that does not eliminate employment, however, C3 does eliminate employment.

(R. 49).

## ANALYSIS

On appeal, plaintiff raises three issues: (1) the ALJ failed to properly consider the treating physician's opinion; (2) the ALJ's credibility determination was faulty, and (3) the ALJ's step five finding is not supported by substantial evidence.[3] (Dkt. 17 at 3).

---

[2] As with the medical records, the Court will briefly summarize the hearing testimony regarding Dr. Miller's opinion.

[3] This allegation of error is actually an argument that the ALJ's RFC analysis does not "accurately reflect [plaintiff's] limitations."

**<u>Treating Physician's Opinion</u>**

Plaintiff argues that the ALJ failed to properly weigh the opinion of Dr. Peteryne Miller at Grand Lake Mental Health Center. (Dkt. 17). Specifically, plaintiff argues that the ALJ failed to explain "why he rejected some of the doctor's restrictions while adopting others." Id. Plaintiff points out that the ALJ relied in part on Dr. Miller's opinion to find moderate difficulty in plaintiff's social functioning at step two, then seemed to discredit the opinion as "based on self-report" at step four. Id. The Commissioner argues that plaintiff is trying to "rewrite the agency's regulations and rulings by moving the steps 2 and 3 analysis into steps 4 and 5." (Dkt. 20 at 4).

Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); see also Hackett v. Barnhart, 395 F.3d at 1173-74 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); Thomas v. Barnhart, 147 Fed.Appx. 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

The analysis of a treating physician's opinion is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight" by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent

with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 404.1527. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. See Anderson v. Astrue, 319 Fed.Appx. 712, 717 (10th Cir. 2009) (unpublished).[4]

Here, the ALJ assigned "some" weight to Dr. Miller's opinion[5] because he found that it was "almost all based on self-report." (R. 22). By assigning "some" weight, the ALJ did not afford the opinion "controlling" weight. Thus, the ALJ was required to give the treating physician's opinion deference in reference to the factors identified above, and to explain the

---

[4] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

[5] The ALJ referred to Dr. Miller's opinion throughout the Decision as "Exhibit 19F," and never noted that Dr. Miller was plaintiff's treating physician.

7

weight given the opinion in light of those factors. See 20 C.F.R. § 404.1527; Anderson, 319 Fed.Appx. at 717.

The ALJ's discussion of plaintiff's mental health records is limited to three pages of medication check notes with a registered nurse at Grand Lake Mental Health Center after Dr. Miller doubled plaintiff's depression medication. (R. 22, 410-12). The ALJ did not discuss any of plaintiff's other treatment notes from Grand Lake Mental Health Center. (R. 370-405). The ALJ then noted that "[t]he evidence in this record indicates that when properly medicated, the claimant's psychiatric symptoms decreased to a manageable level, not contradictory with the residual functional capacity above." (R. 22). It is unclear from the ALJ's discussion how all of the records from Grand Lake combined lead to this conclusion.

When weighing Dr. Miller's opinion at step four, the ALJ said that he "assign[ed] some weight to the opinion at Exhibit 19F, but the limitations are almost all based on self-report. However, the report indicates that the claimant would be able to work, as long as she does not have to interact with others."[6] Id.

In this case, the ALJ does not say that he specifically rejected Dr. Miller's opinion, but he also fails to discuss how he reached the conclusion that Dr. Miller's opinion is entitled to "some" weight and that the opinion "indicates that the claimant would be able to work, as long as she does not have to interact with others." (R. 22). The ALJ's decision does not explain why he accepted some of Dr. Miller's limitations (all of which are noted to be based on plaintiff's self-reporting) but rejected others.[7] Further, Dr. Miller's opinion is not contradicted, and the ALJ is

---

[6] Dr. Miller's opinion does not state an opinion on plaintiff's ability to work. (R. 425-27).

[7] For example, the ALJ did not discuss the portions of plaintiff's Function Report Adult that show that plaintiff's daughter helps with her housework, that plaintiff is unable to handle stress, that being around people "gets on [her] nerves," that she does not like "to be asked a lot of questions," or that she is easily agitated. (R. 17-18, 152-59).

not permitted to pick and choose evidence favorable to his decision. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

This issue must be remanded for the ALJ to properly weigh Dr. Miller's treating source opinion.

**Residual Functional Capactiy**

Plaintiff argues that the ALJ's improper consideration of Dr. Miller's opinion infects the RFC analysis. (Dkt. 17). The Commissioner argues that the ALJ properly formulated plaintiff's RFC based on the "limitations supported by substantial evidence in the record." (Dkt. 20 at 7).

At step four, the ALJ must determine plaintiff's residual functional capacity, which reflects the most a claimant can do despite her limitations. See 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. The ALJ must consider all of a claimant's medically determinable impairments, whether they are severe or not severe. See 20 C.F.R. § 404.1545(a)(2). The Tenth Circuit has held that "failure to consider all of the impairments is reversible error." Salazar v. Barnhart, 468 F.3d 615, 621 (10th Cir. 2006). The residual functional capacity findings "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. The ALJ must "discuss[ ] the evidence supporting his [RFC] decision, and … also … the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

When discussing the "paragraph B" criteria at step two, the ALJ relied in part on Dr. Miller's opinion to find that plaintiff experienced "moderate difficulties" in social functioning.[8] (R. 18). In reaching this conclusion, the ALJ mentioned that Dr. Miller's opinion rated plaintiff as "markedly limited in her ability to interact appropriately with the public and the ability to

---
[8] In the remaining two functional area "paragraph B" categories, the ALJ relied solely on plaintiff's Function Report Adult. (R. 17-18, 152-59).

9

work with others without causing distractions, [and] that [s]he was moderately limited in the ability to accept instructions and criticism from supervisors." Id. He then determined that "[t]he limitations identified in this report, taken together, support a moderate limitation in the claimant [sic] ability to function socially." Id. (emphasis added). At step four, the ALJ found that this moderate social limitation means that plaintiff can "relate to co-workers and supervisors on a superficial work basis, but is not able to work with the general public." (R. 19). However, the ALJ never explains how plaintiff's marked limitations can be "taken together" with her moderate limitations to support a finding of a combined moderate limitation.

Additionally, the ALJ failed to explain adequately his disagreement with the vocational expert, who indicated that plaintiff's marked limitation would prevent her from working. The ALJ's stated reason for disagreeing with the vocational expert follows:

> It should be noted that the vocational expert testified that the "marked" limitation under C3 in Exhibit 19F would eliminate employment, because this would mean the claimant were [sic] causing distractions. The undersigned does not interpret the form quite the same way. The undersigned interprets the limitations as to say that the claimant should only have superficial interaction with co-workers and supervisors. Thus, the undersigned does not find that limitation preclusive of competitive employment.

(R. 23). The form to which the ALJ is referring states that plaintiff experiences a marked limitation in her ability to work with others without causing distractions because plaintiff "reported experiencing panic attacks and compulsive counting," that plaintiff suffers a moderate limitation in her ability to accept criticism from supervisors because plaintiff "reported experiencing increased irritability" (R. 426), and that plaintiff experiences a marked limitation in her ability to work closely to others without being distracted because she "reported experiencing difficulty with unfamiliar people." (R. 425). When presented with Dr. Miller's opinion, the vocational expert testified that plaintiff's marked limitation in her ability to work with others without causing distractions would preclude competitive employment. (R. 48). The form lists

distinctly separate limitations which address plaintiff's ability to relate to and/or interact with supervisors and co-workers. The ALJ does not explain why he interprets these limitations differently than the vocational expert, only that he does.

To summarize, at step two the ALJ appears to accept Dr. Miller's opinion of marked limitations in plaintiff's ability to interact appropriately with the public and to work with others without causing distractions. The ALJ also appears to accept Dr. Miller's opinion that plaintiff has a moderate limitation in her ability to accept instruction and criticism from supervisors. Two of those accepted opinions have an associated RFC limitation: the marked limitation in plaintiff's ability to interact appropriately with the public, and the moderate limitation in plaintiff's ability to accept instruction and criticism from supervisors. Yet, the ALJ does not explain how these combined limitations become a moderate limitation. Nor does the ALJ adequately explain his reason for rejecting the vocational expert's application of the marked limitation to plaintiff's ability to work. Had the ALJ managed either of these tasks, there would be no error on this issue. He did not.

Therefore, this issue must be remanded for the ALJ to properly explain the evidence supporting his RFC determination.

**Credibility**

Plaintiff argues that the ALJ failed to assess properly her credibility by using boilerplate language and by taking evidence out of context.[9] (Dkt. 17). The Commissioner responds that the Court should uphold the ALJ's credibility determination because the ALJ cited one mental health treatment note showing improvement, and that the Court "should not assume otherwise" when an ALJ states that he has carefully reviewed the entire record. (Dkt. 20 at 6).

---

[9] Plaintiff only disputes the ALJ's credibility findings with regard to her mental impairments, therefore, the ALJ's physical credibility determination is affirmed.

This Court is not to disturb an ALJ's credibility findings if they are supported by substantial evidence because "[c]redibility determinations are peculiarly the province of the finder of fact." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (citing Diaz v. Secretary of Health & Human Svcs., 898 F.2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (citing Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ may consider a number of factors in assessing a claimant's credibility, including "the levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

The ALJ's use of boilerplate language in the credibility determination is not error as to plaintiff's physical limitations because the ALJ linked his findings to contrasting evidence in the record. (R. 20-22). However, plaintiff is correct that the ALJ mishandled her credibility analysis regarding her mental impairments.

The ALJ must link his credibility findings to the evidence. See Kepler, 68 F.3d at 291. The ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2004). However, the ALJ is not allowed to "pick and choose" only evidence favorable to his decision. Hardman v. Barnhart, 362 F.3d 676, 681 (10th Cir. 2004).

The ALJ summarized plaintiff's testimony and the medical record, noting instances of inconsistency with plaintiff's claims of disability. The ALJ only discussed one exhibit from plaintiff's mental health records. (R. 22). That exhibit showed some improvement after

plaintiff's medication was doubled. However, there are other treatment records that show the opposite, and the ALJ did not discuss them. (R. 370-405). Further, the Court has already determined that the ALJ's weighing of plaintiff's treating physician's opinion (as to her mental health) was improper and that the ALJ's RFC determination is not sufficient. Because the ALJ did not properly analyze the mental health evidence, this portion of the ALJ's credibility determination must be remanded as well.

## CONCLUSION

For the foregoing reasons, the ALJ's decision finding plaintiff not disabled is **REVERSED and REMANDED** for further proceedings. Specifically, the ALJ should perform a proper treating physician's analysis on Dr. Miller's opinion, properly explain the evidence that supports his RFC findings, and provide a proper credibility analysis with regard to plaintiff's mental impairments only.

SO ORDERED this 26th day of March, 2015.

_____
T. Lane Wilson
United States Magistrate Judge